## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 05 2013

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

| | | |
|---|---|---|
| **U.S. SPECIALTY INSURANCE COMPANY,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | Civil Action No. 4:13cv0445-SWW |
| **GARISON CONSTRUCTORS OF ARKANSAS, LLC; ANDREW GARISON, SR.; KAY GARISON** | § § § § | |
| **Defendants.** | § § | This case assigned to District Judge Wright and to Magistrate Judge Young |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, U.S. Specialty Insurance Company, complains of Defendants, Garison Constructors of Arkansas, LLC; Andrew Garison, Sr.; and Kay Garison, and respectfully states as follows:

### Parties

1.      U.S. Specialty Insurance Company is a California corporation with its principal place of business in the State of California.  The Surety is authorized to do business in the State of Arkansas.

2.      Garison Constructors of Arkansas, LLC is an Arkansas limited liability company and can be served with process at 1419 Westpark Drive, Suite A, Little Rock, Arkansas, 72204.

3.      Andrew Garison, Sr. is an individual resident of the State of Arkansas and can be served with process at 5 Nob View Circle, North Little Rock, Arkansas, 72205.

4.      Kay Garison is an individual resident of the State of Arkansas and can be served with process at 5 Nob View Circle, North Little Rock, Arkansas, 72205.

### *Jurisdiction*

5.     The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332.  The parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and cost.

### *Venue*

6.     Venue is proper in this district under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the Surety's claim occurred in this district.

### *Factual Background*

7.     The Surety issued performance and payment bonds on behalf of Garison Constructors of Arkansas, LLC ("Garison") in connection with multiple construction projects in the State of Arkansas.  Garison was named as the principal on the bonds. The bonds issued by the Surety included the following (collectively, the "Bonds") for the following projects (collectively, the "Projects") and owners (collectively, the "Owners"):

| BOND NO. | PROJECT NAME | OWNER |
|---|---|---|
| 1000850258 | Good Samaritan Campus Nursing Facility Alteration | The Good Samaritan Society |
| 1000850259 | Good Samaritan Campus Dining Hall | The Good Samaritan Society |
| 1000850260 | Addition to Carlisle High School | Carlisle School District |
| 1000850266 | Reno Science Building for Kindergarten, Reno Elementary Restrooms | Carlisle School District |
| 1000850187 | Sequoyah Elementary Safe Room and Classroom Additions | Russellville School District |

8.     The Surety required indemnity prior to issuance of any bond.

9.     This indemnity requirement was met through the execution of a *General Indemnity Agreement* in favor of the Surety, dated May 4, 2010, and signed by Principal, as a

corporate indemnitor, and Andrew Garison, Sr. and Kay Garison, as individual indemnitors (the "Indemnity Agreement"). A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit "1" and fully incorporated by reference herein.

10. The Defendants have an obligation under Section III of the Indemnity Agreement to indemnify the Surety from loss:

> THE PRINCIPAL AND INDEMNITOR SHALL, JOINTLY AND SEVERALLY, EXONERATE, INDEMNIFY, KEEP INDEMNIFIED, REIMBURSE AND SAVE AND HOLD THE SURETY HARMLESS FROM AND AGAINST ANY AND ALL DEMANDS, LIABILITIES, LOSSES, COSTS, DAMAGES, ATTORNEYS' FEES AND EXPENSES, INVESTIGATIVE FEES AND EXPENSES...INTEREST, COURT COSTS AND ANY AND ALL OTHER TYPES OF LIABILITIES, LOSSES, COSTS OR EXPENSES OF WHATSOEVER KIND OR NATURE, AND FROM AND AGAINST ALL SUCH LIABILITIES, LOSSES OR EXPENSES WHICH THE SURETY MAY SUSTAIN OR INCUR OR WHICH ARISE BY REASON OF OR IN ANY MANNER IN CONSEQUENCE OF, NO MATTER HOW REMOTELY, ANY ONE OR MORE OF THE FOLLOWING: THE EXECUTION OR PROCUREMENT BY THE SURETY OF ANY BOND..."

11. The Defendants have an obligation under Section XI of the Indemnity Agreement to collateralize the Surety in connection with possible loss:

> IF AN EVENT OF DEFAULT SHALL OCCUR, OR IF ANY CLAIM IS MADE AGAINST THE SURETY BY ANY SUBCONTRACTOR, SUPPLIER, OBLIGEE OR OTHER PERSON UNDER ANY BOND, WHETHER SUCH CLAIM SHALL BE DISPUTED OR NOT AND WITHOUT LIMITING OTHER RIGHTS AND REMEDIES OF SURETY...UPON THE SURETY'S DEMAND THE PRINCIPAL AND INDEMNITOR SHALL IMMEDIATELY DEPOSIT WITH THE SURETY MONEY, SECURITIES OR OTHER COLLATERAL IN ANY AMOUNT AND FORM DESIGNATED BY AND ACCEPTABLE TO THE SURETY.

12. The Defendants assigned various rights to the Surety in Section IV of the Indemnity Agreement:

> As security for all of the provisions of this Agreement and any other indebtedness or liabilities of the Principal and Indemnitor to the Surety, whenever and however incurred, the Principal and Indemnitor do hereby assign, transfer, pledge, convey and set-over to the Surety the property, rights and entitlements, and any proceeds

thereof…[including] All right, title and interest of any Principal or Indemnitor in, to or arising in any manner out of any Contract including, without limitation, the right to receive progress payments, payments on claims, changes or allowance, retained sums or any and all other monies due or to become due deriving in any manner from any Contract…

13.     The Defendants agreed in Section IX of the Indemnity Agreement that the Surety had a right to settle claims asserted against its bonds:

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise or appeal any claim, demand, suit, award or judgment on or in connection with any Bond or Bonded Contract.

14.     The Defendants agreed in Section XV of the Indemnity Agreement to allow access to their books and records:

The Principal and Indemnitor shall furnish to the Surety such information as the Surety may request from time to time concerning the financial condition of the Principal or Indemnitor… Until such time as the liability of the Surety under any and all Bonds is terminated, the Surety shall have the right to access all of the books, records, and accounts of the Principal or Indemnitor, wherever located, at any and all reasonable times, and upon reasonable notice. The Surety shall have access to any information maintained on behalf of or in connection with the Principal or Indemnitor at any banks, depositories, with any obligees on any Bond…

15.     After execution of the Bonds, claims were asserted by subcontractors and suppliers of the Principal against the Bonds for alleged non-payment for work and/or materials delivered by the subcontractors and suppliers to the Projects.

16.     In light of the claims against the Bonds and the losses incurred by the Surety under the Bonds, the Defendants have an obligation under the Indemnity Agreement to indemnify the Surety from any loss, exonerate the Surety from all asserted liability, and post collateral to cover losses of the Surety.

17.     The Surety has made demand on the Defendants to fulfill their obligations under the Indemnity Agreement; however, the Defendants have failed and refused and continue to fail

and refuse to (i) indemnify and exonerate the Surety from liability; (ii) collateralize the Surety for all anticipated losses; and (iii) assign their rights and interests under the construction contracts to the Surety. The Surety currently estimates a total net loss under the Bonds of at least $350,000.

18.     All conditions precedent to recovery by the Surety from each defendant has occurred or has been performed.

### Count I
### Breach of Indemnity Agreement

19.     The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 18.

20.     The Defendants are jointly and severally liable to the Surety under the Indemnity Agreement for all losses the Surety has incurred on the Bonds, which are in excess of the minimum jurisdictional limits of this Court.

### Count II
### Exoneration

21.     The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 18.

22.     The Defendants are jointly and severally liable to the Surety under the Indemnity Agreement for all amounts necessary to exonerate the Surety from liability asserted against it, which are in excess of the minimum jurisdictional limits of this Court.

### Count III
### Collateralization/Quia Temet

23.     The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 18.

24.     The Defendants are jointly and severally liable to the Surety under the Indemnity

Agreement for any amount of collateral necessary to cover all anticipated losses of the Surety under the Bonds, which are in excess of the minimum jurisdictional limits of this Court.

### Count IV
### *Specific Performance of Indemnity Agreement*

25.     The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 18.

26.     The Surety requests that the Court compel the Principal to assign all its rights to payment of any contract balance, retainage, pursuant to Section IV of the Indemnity Agreement. The Surety further requests that the Court compel the Defendants to provide access to their books and records pursuant to Section XV of the Indemnity Agreement.

### Count V
### *Recovery of Attorneys' Fees and Expenses*

27.     The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 18.

28.     The Surety is entitled to recover its attorneys' fees and expenses from the Defendants under Section III of the Indemnity Agreement.

29.     Additionally, and alternatively, the Defendants are obligated to reimburse the Surety for its reasonable attorneys' fees incurred in the bringing of this complaint under Ark. Code Ann. § 16-22-308 (West) and the Indemnity Agreement.

### *Request for Relief*

For the foregoing reasons Plaintiff, U.S. Specialty Insurance Company, respectfully requests that the Defendants be cited to appear and answer herein and, upon final trial thereof, that the Surety receive:

1.  Judgment against the Defendants, jointly and severally, in the amount of damages incurred by the Surety;

2.  Judgment against the Defendants, jointly and severally, for amounts necessary to exonerate the Surety from all liability asserted against it;

3.  An Order of the Court compelling the Defendants to perform their obligations under the Indemnity Agreement;

4.  Attorneys' fees and expenses;

5.  Pre-judgment and post judgment interest at the maximum permissible at law or in equity;

6.  Costs of court;

7.  Such other and further relief to which the Surety is justly entitled.

Respectfully submitted,

**LANGLEY WEINSTEIN LLP**

By: _____

Keith A. Langley
Arkansas State Bar No. 2008014

Gregory M. Weinstein *(Pro hoc vice admission pending)*
Texas Bar No. 21096430

901 Main Street, Suite 600
Dallas, Texas 75202
214-722-7160
214-722-7161 (Facsimile)
gweinstein@lwllp.com

**ATTORNEYS FOR U.S. SPECIALTY
INSURANCE COMPANY**

# HCC SURETY GROUP ®

### General Indemnity Agreement

THIS GENERAL INDEMNITY AGREEMENT (hereinafter, this "Agreement") is made, entered into, and given this <u>Fourth</u> day of <u>May</u>, 2010 by the Principal (as hereinafter defined): _____
<u>Garison Construtors of Arkansas, LLC</u>

(Insert full name of Principal(s))

and the Indemnitor (as hereinafter defined): <u>Andrew Garison, Sr. and Kay Garison</u>

(Insert full name of Indemnitor(s), if any)

jointly, severally, collectively and individually, and is executed for the continuing benefit of "Surety", as hereinafter defined.

In consideration of the premises set forth herein, the delivery by the Surety to the Principal and Indemnitor of One Dollar ($1.00), and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged by the Principal and Indemnitor, the Principal and Indemnitor, for themselves, their affiliates, subsidiaries, divisions, successors, assigns, executors and administrators hereby covenant, agree and bind themselves, jointly and severally, to the Surety as follows:

## I. DEFINITIONS

The terms listed below shall have the following meanings for purposes of this Agreement:

A. "Bond" or "Bonds": Any contractual obligation, undertaking, contract of suretyship, guaranty or indemnity, undertaken by Surety, issued on behalf of, or procured for the Principal by Surety, before, on, or after the date of this Agreement, and any renewal, modification, extension or substitution of said obligation, undertaking, contract of suretyship, guaranty or indemnity.

B. "Contract": Any agreement between or among the Principal and any one or more parties, including but not limited to any such agreement in connection with which a Bond has been issued, together with all associated documents, including but not limited to general and special conditions, specifications, drawings, schedules and/or CPMs.

C. "Bonded Contract" shall mean any Contract in connection with which a Bond shall have been issued.

D. "Dispute" shall mean the state of relations between Surety and Indemnitor that exists if and when Indemnitor asserts, as an element of a claim against Surety or in the form of a defense or excuse for refusing to comply with a demand by Surety for performance by Indemnitor pursuant to this Agreement, that Indemnitor is not obligated to perform as demanded by Surety because Surety failed to exercise some duty or to meet some standard of care alleged by Indemnitor to apply to Surety with respect to Surety's acts, omissions, conduct or exercise of discretion in relation to this Agreement or to a Bond or a Contract, including but not limited to any dispute between Indemnitor and Surety concerning whether a claim against a Bond should be or should have been denied, settled, or paid, or in what amount, and any dispute concerning whether, how, and to what extent Principal or Surety should engage or should have engaged in any kind of dispute resolution or adjudicatory process, either between themselves or with a claimant or other third party in relation to this Agreement or to a Bond or a Contract, and Dispute includes but is not limited to any circumstances in which Indemnitor and Surety are engaged in a dispute resolution process, such as mediation or arbitration, or in an adjudicatory process in a court of law or of equity regarding the enforcement of any of the provisions of this Agreement.

E. "Event of Default" shall mean any one or more of the following:

1. Any abandonment, forfeiture, breach, failure, refusal or inability of any Principal, whether actual or alleged, to   perform any contract, or any obligation contained therein;

2. Any abandonment, forfeiture, breach, failure, refusal or inability of any Principal, whether actual or alleged, to perform any obligation contained in any Bond;

3. Any abandonment, forfeiture, breach, failure, refusal or inability of the Principal or Indemnitor, whether actual or alleged, to perform any contract or agreement, other than this Agreement, to which the Surety and any Principal or Indemnitor shall be parties, including but not limited to, any security agreement, mortgage, deed of trust or other document or instrument delivered to the Surety for the purpose of providing collateral security of the Principal's or Indemnitor's obligations hereunder, or the non-renewal or failure to honor, by any issuer or bank, any letter of credit provided to or for the benefit of the Surety;

4. A determination by the Surety, in its sole and absolute discretion, that the Principal's successful bid on a Bonded Contract was significantly lower than the bid of either or both of the next two (2) highest bidders;

5. The declaration by any Bond obligee or project owner that any Principal is in default under any contract, irrespective of whether or not such Principal is actually in default under such contract or the

- 1 -


EXHIBIT

1

acknowledgement by such Principal of its default under such contract, it being agreed that it shall be no defense to the enforcement of the terms of this Agreement by the Surety that any Principal or Indemnitor asserts that it or they are not in default under any Contract as alleged;

6. Any failure of any Principal at any time to provide adequate manpower, staffing, supervision, or material in the performance of work called for under any Contract as alleged by any obligee, or as determined by the Surety in its sole and absolute discretion;

7. Any failure of any Principal to meet or maintain any schedule or CPM approved by any obligee, or any of its representatives, as alleged by any obligee or as determined by the Surety in its sole and absolute discretion;

8. Any delay, failure, refusal or inability of any Principal to pay claims, bills or any other indebtedness incurred in, or in connection with, the performance of any Contract, in whole or in part, when such obligations come due;

9. The payment by the Surety of any claim under any Bond;

10. Any suit or other judicial or quasi-judicial proceeding, including arbitration, being commenced against the Surety;

11. Any failure or refusal by any Principal or Indemnitor to perform any obligation under any provision or term of this Agreement, as determined by the Surety in its sole and absolute discretion;

12. Any failure by any Principal or Indemnitor to pay or discharge, when due or as demanded by the Surety, any indebtedness of any Principal to the Surety or to any obligee, or to any subcontractor, supplier, laborer or materialman or any other claimant on any Bonded Contract or under any Bond;

13. Receipt of any information by the Surety or the existence of any facts relating to the financial condition of any Principal or Indemnitor which causes the Surety, in its sole and absolute discretion, to believe that such Principal or Indemnitor may be unable to perform or meet any of their obligations under this Agreement;

14. Any failure by any Principal to notify the Surety, in writing, within five (5) days of such Principal's receipt of a cure, show cause or other notice from any obligee that any Principal has defaulted or has failed or refused to perform any Contract obligation, or must cure its performance or in any manner show cause as to why any Principal should not be terminated by the obligee for default;

15. Any failure by any Principal to notify the Surety, in writing, within ten (10) calendar days, of any increase or increases in the dollar amount or value of any Bonded Contract, by modification, change order, directive, or series of modifications, change orders or directives, or otherwise which increases the dollar amount, value or contract price of such Bonded Contract by more than twenty-five percent (25%);

16. Any representation or warranty made by any Principal or Indemnitor to the Surety including, without limitation, any representation as to the financial condition of any Principal or Indemnitor, which is found, at any time, to be untrue, inaccurate or incomplete;

17. The submission to the Surety or the Surety's agent by any Principal or Indemnitor of any financial information which is deemed by the Surety, at any time, to be or to have been, materially false, incomplete, or misleading;

18. The submission to the Surety or the Surety's agent by any Principal or Indemnitor of any information used by the Surety in the process of underwriting any Bond which is determined by the Surety, at any time, to be or to have been, materially false, incomplete, or misleading;

19. Any diversion of any Contract funds by any Principal from any Bonded Contract to make payment of obligations on any other Bonded Contract or unbonded Contract, or any other obligations of any kind, prior to obtaining the complete discharge of the Surety on the Bonded Contract from which funds have been diverted;

20. Any pledge or assignment by the Principal of any contract balance or contract receivable from a Bonded Contract to a third party, including a lender or factor, without the prior express written authority of the Surety;

21. The commencement of any composition, insolvency, bankruptcy, receivership, trusteeship or other such proceeding of which any Principal or Indemnitor becomes a subject, or any assignment for the benefit of creditors by any Principal or Indemnitor;

22. The insolvency of any Principal or Indemnitor;

23. Any individual Principal's death, adjudication of mental incompetence or disability, conviction of a felony, becoming a fugitive from justice or inability to be located after reasonable efforts;

24. Any material change in the character, identity, control, composition, beneficial ownership or legal status or existence of any entity which shall be a Principal or Indemnitor, it being understood that a change in 5% or more of the ownership or controlling interests in any such entity shall be deemed a material change;

25. The initiation of any proceeding which materially deprives any Principal of the use of such Principal's plant, facilities, equipment, machinery, tools, supplies or materials;

26. The establishment by the Surety, in its sole and absolute discretion, of any reserve in any amount in connection with any Bond;

- 2 -

27. The failure of any Principal or Indemnitor to pay any premium to the Surety, including but not limited to additional premiums based on an overrun in contract price, or to any agent of the Surety, when due or as demanded thereafter by the Surety.

F. "Good Faith" with respect to an act, omission or exercise of discretion by Surety shall mean either an absence of actual malice toward the Principal and Indemnitors or objective reasonableness, such that Good Faith exists within the contemplation of this Agreement with respect to an act, omission or exercise of discretion by Surety if such act, omission or exercise of discretion is undertaken without malice toward the Principal and Indemnitors even if such act, omission or exercise of discretion is not objectively reasonable, and Good Faith exists within the contemplation of this Agreement with respect to an act, omission or exercise of discretion by Surety if such act, omission or exercise of discretion is objectively reasonable even if such act, omission or exercise of discretion is not without actual malice toward the Principal and Indemnitors.

G. "Indemnitor" shall mean and include any and all Principal(s) as hereinafter defined, and each and every person or entity, separately, and any and all such persons and entities collectively, jointly, severally, and individually who or which execute this Agreement as an Indemnitor(s), and any and all of its or their parents, affiliates, divisions, subsidiaries, successors, assigns, partners, and/or joint venturers, and references in this Agreement to "Indemnitor," "Indemnitors," or "Principal and Indemnitors" shall be construed in all instances in the broadest cognizable sense to apply individually and collectively to all of the entities bound by this Agreement, and any variance in such usage in the body of this Agreement shall be deemed incidental and not meaningful for purposes of construing this Agreement.

H. "Principal" shall mean any and all individuals or entities executing this Agreement as Principal(s) and any and all individuals or entities executing a Bond as a principal, and any and all of its or their parents, affiliates, divisions, subsidiaries, successors, assigns, partners, or joint venturers, provided that in the event that an individual or entity executes a Bond as principal but found not to be bound to this Agreement as a Principal, then the inclusion of such individual or entity in the definition of Principal shall be for purposes of reference, only, and shall not otherwise affect the enforceability of this Agreement.

I. "Surety" shall mean American Contractors Indemnity Company, U.S. Specialty Insurance Company, United States Surety Company, Pioneer General Insurance Company, Texas Bonding Company, HCC Insurance Holdings, Inc., HCC Surety Group, their affiliates, divisions, subsidiaries, successors, assigns, co-sureties, reinsurers, fronters, partners and/or joint venturers; and any other person or entity which Surety may direct, request or procure to act as Surety or as a Co-Surety on any Bond; and any other person or entity who executes a Bond at the request of Surety.

J. "Additional Sureties" shall mean any other company that may execute Bonds as directed or requested by the Surety.

## II.   INDEMNITOR REPRESENTATIONS AND CONSIDERATION

Indemnitor represents, warrants and guarantees, unconditionally and with the intention that Surety shall detrimentally rely upon such representations without investigation or verification, as follows:

A. **INDEMNITOR HAS READ THIS AGREEMENT CAREFULLY, INDEMNITOR HAS CONSULTED WITH AN ATTORNEY REGARDING THIS AGREEMENT OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY REGARDING THIS AGREEMENT AND HAS ELECTED NOT TO DO SO; AND INDEMNITOR UNDERSTANDS THIS AGREEMENT AND THAT INDEMNITOR IS BOUND TO THE TERMS OF THIS AGREEMENT;**

B. If a natural person, Indemnitor is in all ways competent and qualified to enter into this Agreement and does so willingly and without duress, and if Indemnitor is a legal entity other than a natural person, the person acting on behalf of such Indemnitor is in all ways authorized, qualified and competent to bind Indemnitor to the terms of this Agreement, and there is no document, or form or formality of expression other than what has been given or provided to Surety in connection with the execution of this Agreement that is required in order for Indemnitor to be bound to this Agreement;

C. This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement, and is made or entered into as a result of negotiations, in a free and active market in which Indemnitor has and has had alternatives;

D. Indemnitor intends that Surety shall rely upon Indemnitor's representations and undertakings as expressed in this Agreement and upon Indemnitor's credit, including all of Indemnitor's assets, and that Surety shall undertake legal or financial risk or forego rights or remedies that might otherwise be available to Surety based upon such reliance, and such reliance is reasonable;

E. Indemnitor has a substantial, material and beneficial interest in obtaining one or more Bonds on behalf of the Principal, or in the Surety's forbearance from canceling one or more Bonds, or in the performance and fulfillment of the obligations secured or to be secured by one or more Bonds issued on behalf of the Principal; and

F. Indemnitor's undertakings by and through this Agreement are supported by consideration that may include one or more of the following:

- 3 -

1. The Principal, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely, or as co-venturer with others, may have previously received one or more Bonds from the Surety, or may desire or be required to give or procure certain Bonds and to renew, maintain, continue or substitute the same from time to time, or require new Bonds with the same or different penalties and conditions, or may desire or request that the Surety refrain from canceling one or more Bonds and Surety has processed, considered or acted upon a request by Principal in connection therewith, or Surety may do so in connection with the execution of this Agreement or hereafter, all in reliance upon the undertakings of Indemnitor set forth in this Agreement; and

2. The Principal or Indemnitor may request the Surety to consider the execution or provision of one or more Bonds on behalf of the Principal; and

3. Surety has processed, considered or acted upon a request by Principal in connection with a Bond, or Surety may do so in reliance upon the undertakings of Indemnitor in this Agreement.

## III.   INDEMNITY, EXONERATION AND HOLD HARMLESS

THE PRINCIPAL AND INDEMNITOR SHALL, JOINTLY AND SEVERALLY, EXONERATE, INDEMNIFY, KEEP INDEMNIFIED, REIMBURSE AND SAVE AND HOLD THE SURETY HARMLESS FROM AND AGAINST ANY AND ALL DEMANDS, LIABILITIES, LOSSES, COSTS, DAMAGES, ATTORNEYS' FEES AND EXPENSES, INVESTIGATIVE FEES AND EXPENSES, ACCOUNTANTS' FEES AND EXPENSES, ENGINEERING AND OTHER PROFESSIONAL OR CONSULTANTS' FEES AND EXPENSES OF ANY KIND, IN-HOUSE ATTORNEYS' FEES AND EXPENSES, INTEREST, COURT COSTS AND ANY AND ALL OTHER TYPES OF LIABILITIES, LOSSES, COSTS OR EXPENSES OF WHATSOEVER KIND OR NATURE, AND FROM AND AGAINST ALL SUCH LIABILITIES, LOSSES OR EXPENSES WHICH THE SURETY MAY SUSTAIN OR INCUR OR WHICH ARISE BY REASON OF OR IN ANY MANNER IN CONSEQUENCE OF, NO MATTER HOW REMOTELY, ANY ONE OR MORE OF THE FOLLOWING: THE EXECUTION OR PROCUREMENT BY THE SURETY OF ANY BOND; THE FAILURE OF ANY PRINCIPAL OR INDEMNITOR TO PERFORM OR COMPLY WITH ANY AND ALL OF THE TERMS, COVENANTS AND CONDITIONS OF THIS AGREEMENT; THE ENFORCEMENT OF ANY OF THE TERMS, COVENANTS AND CONDITIONS OF THIS AGREEMENT; THE CONDUCT OF ANY INVESTIGATION REGARDING THE SURETY'S ALLEGED OBLIGATIONS OR LIABILITIES UNDER ANY BOND OR IN CONNECTION WITH ANY CONTRACT; ANY ATTEMPT BY OR ON BEHALF OF THE SURETY TO OBTAIN A RELEASE OR REDUCTION OF THE SURETY'S LIABILITY OR ALLEGED LIABILITY UNDER ANY BOND OR CONTRACT; ANY ATTEMPT BY OR ON BEHALF OF THE SURETY TO RECOVER ANY UNPAID PREMIUM IN CONNECTION WITH ANY BOND; THE PROSECUTION OR DEFENSE OF ANY ACTION OR CLAIM OF WHATSOEVER KIND OR NATURE IN CONNECTION WITH ANY BOND OR CONTRACT WHETHER THE SURETY, IN ITS SOLE AND ABSOLUTE DISCRETION, ELECTS TO EMPLOY ITS OWN COUNSEL OR, IN LIEU THEREOF OR IN ADDITION THERETO, PERMITS OR REQUIRES ANY PRINCIPAL AND INDEMNITOR TO MAKE ARRANGEMENTS FOR OR ASSIST IN THE SURETY'S LEGAL REPRESENTATION AND PROTECTION; THE LOAN OR ADVANCE OF ANY MONIES TO ANY PRINCIPAL OR INDEMNITOR; THE SURETY'S ATTEMPT TO DETERMINE, DISCHARGE OR MITIGATE ITS LOSS OR EXPOSURE TO LOSS IN CONNECTION WITH ANY BOND OR CONTRACT, OR TO ENFORCE ANY OF ITS RIGHTS PURSUANT TO THIS AGREEMENT, BY SUIT OR OTHERWISE.

This indemnity is against both liability incurred by and payment made by Surety, and the obligation of the Principal and Indemnitors to indemnify the Surety shall in all events include, but not be limited to, a specific obligation to pay to Surety the amount of any existing liability of Surety on or in connection with a Bond, whether such liability is contingent or noncontingent, disputed or undisputed, or liquidated or unliquidated, and to pay to Surety any amount that Surety has theretofore expended for any of the purposes contemplated in this paragraph III of this Agreement.   Such payment shall be made by the Principal and Indemnitor to the Surety as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore.   The amount of such payment to Surety by Indemnitor shall be determined by Surety, and Surety's demand for payment hereunder may at Surety's option be in addition to and not in lieu of or substitution for any collateral that may have been previously deposited with Surety by or on behalf of Indemnitor.   Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which Indemnitor would be obligated to indemnify Surety under the terms of this Agreement, or to reimburse itself in the event that Surety shall have paid or subsequently pays any such liability, loss or expense.   Surety shall have no obligation to invest or to provide a return on the payment or any collateral deposited with Surety.   Indemnitor shall be entitled to the refund of any unused portion of the payment upon termination of the liability of Surety on all Bonds and the performance by Indemnitor of all obligations to Surety under this Agreement.   Indemnitor acknowledges that the failure of Indemnitor to pay to Surety, immediately upon demand, the sum demanded by Surety as payment shall cause irreparable harm to Surety

- 4 -

for which Surety has no adequate remedy at law. Indemnitor agrees that Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of Indemnitor under this Agreement including the obligation to pay to Surety the sum demanded, and Indemnitor hereby waives any claims or defenses to the contrary.

In the event of any payment of any kind by the Surety, the Principal and Indemnitor further agree that the liability of the Principal and the Indemnitor shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in Good Faith under the belief that: (1) any Principal or Indemnitor is or has been in default under or pursuant to this Agreement; or (2) the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed; and Principal and Indemnitors further agree, acknowledge and stipulate that, notwithstanding the foregoing or any other provision of this Agreement or any other agreement relating to this Agreement, Surety shall be entitled to the rights and remedies set forth in this paragraph III, and to all of the benefits of this Agreement, with respect to any liability, loss or cost that is incurred or made by Surety in Good Faith.  The Principal and Indemnitor further agree that the liability of the Principal and Indemnitor shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the maximum rate allowed by law, calculated from the date such payment is made by the Surety.

## IV.   ASSIGNMENT

A.   As security for all of the provisions of this Agreement and any other indebtedness or liabilities of the Principal and Indemnitor to the Surety, whenever and however incurred, the Principal and Indemnitor do hereby assign, transfer, pledge, convey and set-over to the Surety the property, rights and entitlements, and any proceeds thereof, whether such property, rights, entitlements or proceeds shall be now owned or hereafter acquired, described herein below:

1.   All right, title and interest of any Principal or Indemnitor in, to or arising in any manner out of any Contract including, without limitation, the right to receive progress payments, payments on claims, changes or allowances, retained sums or any and all other monies due or to become due deriving in any manner from any Contract;

2.   All right, title and interest of any Principal or Indemnitor in any equipment, machinery, plant, tools, inventory, or materials which are now or may thereinafter be ordered, stored or utilized in connection with any Contract, whether or not any such materials are located at a construction site, in storage, in transit or elsewhere;

3.   All right, title and interest of any Principal or Indemnitor in and to all subcontracts or purchase orders let or entered into in connection with any Contract;

4.   All right, title and interest of any Principal or Indemnitor in and to any and all surety bonds, guarantees or other undertakings supporting subcontracts or purchase orders let or entered into in connection with any Contract;

5.   All rights of any Principal or Indemnitor arising out of, or monies due or to become due in connection with, any and all annuities or insurance policies of any type, including but not limited to commercial general liability policies, project wrap-around policies, umbrella policies, property policies, fidelity bonds or policies, life insurance policies, and any and all other policies relating to claims arising out of the performance of any Contract;

6.   All right, title and interest of any Principal or Indemnitor in and to any causes of action, claims, demands, or actions of whatsoever kind or nature which any Principal may have or acquire against any party to any Contract, or causes of action, claims, demands, or actions of whatsoever kind or nature arising out of or connected with any Contract, including but not limited to, actions against any owner, obligee, design professional, subcontractor, supplier, laborer, material man or any other person or entity performing or providing labor, materials or services in connection with any work called for in connection with any Contract.

B.   The assignments set forth in this paragraph IV are effective as of the date of this Agreement.

C.   The assignments set forth in this paragraph IV shall, at Surety's election and without limiting the Surety's rights as otherwise provided at law or in equity or by this Agreement, be in the nature of a contractual subrogation.

## V.   UNIFORM COMMERCIAL CODE

With respect to the assignments set forth in paragraph IV of this Agreement, this Agreement shall constitute a Security Agreement for the benefit of the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code or similar statute of every jurisdiction wherein such Code or statute is in effect, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, any other agreements between or among the Surety, any Principal or Indemnitor under

law, or in equity. A carbon copy, photographic copy or other reproduction of this Agreement shall be sufficient to be, and may be filed as, a Financing Statement or Security Agreement, and the Principal and Indemnitor expressly consent to and authorize such a filing by the Surety. The failure of the Surety to file this Agreement or a copy of this Agreement shall not release or excuse any of the obligations of any Principal or Indemnitor under this Agreement, or otherwise. The Surety may add such schedules to this Agreement as it deems advisable, describing more specifically items of security covered by this Assignment. Notwithstanding the foregoing, the Principal and Indemnitor shall execute and deliver to the Surety, upon its request, such further or additional instruments as may be necessary or desirable in the Surety's sole and absolute discretion to permit or facilitate either the filing of this Agreement as a Financing Statement or Security Agreement, or the filing of any separate or Financing Statement or Security Agreement, based upon this Agreement, in such states, counties, or other places as the Surety may deem necessary or advisable. Indemnitor acknowledges and agrees that, with respect to any settlement of a claim against a Bond involving disposition of rights, remedies, claims or interests arising under or in relation to the Bonded Contract, such disposition will conclusively be deemed to have been commercially reasonable so long as the settlement of the claim is otherwise in accordance with the standards set forth in this Agreement or otherwise applicable with respect to the settlement of such claims.

## VI.   ATTORNEY IN FACT

The principal and indemnitor hereby irrevocably nominate, constitute, appoint and designate the surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of such principal and indemnitor assigned, transferred and set over to the surety in this agreement, and in the name of such principal and indemnitor to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the surety under all other provisions of this agreement. The Principal and Indemnitor hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact. Without limiting the generality of the foregoing, the Principal and Indemnitor expressly agree and recognize that the powers given to the Surety herein, as attorney-in-fact, include the powers and authority to execute any and all documents, including deeds, checks, stock certificates, bonds, and to take any and all actions that the Surety may deem necessary in order to liquidate or acquire any property, real or personal, assigned, transferred to, or acquired by the Surety as security, indemnity, or reimbursement in connection with the obligations of the Principal and Indemnitor pursuant to this Agreement.

## VII.   TRUST FUNDS

The Principal and Indemnitor agree and hereby expressly declare that all funds received by any Principal or Indemnitor, or due or to become due under any Bonded Contract, are trust funds, whether in the possession of any Principal or another, for the benefit and payment of all persons to whom the Principal incurs obligations in the performance of such Bonded Contract and to which the Surety would be liable under such Bonded Contract, or for the benefit of, payment to or reimbursement of the Surety for any liability, loss, cost or expense the Surety may sustain or incur under any Bond or which is otherwise recoverable under this Agreement. If the Surety discharges any such obligation, it shall be entitled to assert the claims of any such person or entity to the trust funds. Any Principal shall, upon demand of the Surety and in implementation of the trust or trusts hereby created, open an account or separate accounts with a bank or similar depository designated by the Principal and approved by the Surety, which account or separate accounts shall be designated as a trust account or trust accounts for the deposit of such trust funds, and shall deposit therein all monies received pursuant to such Bonded Contract. Withdrawals from such accounts shall be by check or similar instrument signed by the Principal and countersigned by a representative of the Surety. Said trust or trusts shall terminate on the payment by the Principal and Indemnitor of all of the obligations for the payment of which the trust or trusts are hereby created, or upon the expiration of twenty (20) years from the date hereof, whichever shall first occur.

## VIII.   JOINT CHECKS

Upon the occurrence of an Event of Default, and upon the written request of the Surety, the Principal shall direct any Bond obligees or project owners as may be designated by the Surety to deposit any further progress payment or other forms of payment in relation to any Contract to a specified bank account, or to make checks payable, jointly, to the Principal and the Surety or to the Principal and such laborers, materialmen or others as may be indicated by the Surety.

## IX.   SETTLEMENTS

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise or appeal any claim, demand, suit, award or judgment on or in connection with any Bond or Bonded Contract. If, however, any Principal or Indemnitor desires that any claim, demand, suit, award or judgment be defended, resisted or litigated, or that any judgment, award or assessment against any Principal or the Surety be appealed or protested, such Principal or Indemnitor shall:

A. Give written notice to the Surety to this effect by certified or registered mail; and

B. Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement. The Surety shall be entitled to utilize counsel of its own choice in defending, resisting, litigating or appealing any such claim, demand, suit, award or judgment, or in appealing from any judgment, award or assessment, whether or not any Principal or Indemnitor also provides their own counsel, and all associated costs and expenses shall be recoverable by the Surety pursuant to this Agreement. Indemnitor's performance of both sub-paragraphs A and B of this paragraph IX shall be an absolute condition precedent to any obligation of Surety to defer or accede to, or cooperate with, any request by Principal or Indemnitor that Surety defend, resist, litigate, appeal or protest, as applicable, any claim, demand, suit, award or judgment, provided that nothing in this paragraph IX or otherwise in this Agreement shall be deemed to create or imply the existence of any such obligation.

## X.   REIMBURSEMENT

In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety, or any voucher or vouchers, invoices or other evidence of such payment shall be prima facie evidence of the fact and the amount of such payment, and the extent of the liability of any Principal and Indemnitor to the Surety, and in the absence of actual fraud shall be final, conclusive and binding upon any Principal and Indemnitor in any claim, suit or other proceeding by the Surety to recover the amount of such payments pursuant to this Agreement or otherwise.

## XI.   DEPOSIT WITH SURETY

A. **IF AN EVENT OF DEFAULT SHALL OCCUR, OR IF ANY CLAIM IS MADE AGAINST THE SURETY BY ANY SUBCONTRACTOR, SUPPLIER, OBLIGEE OR OTHER PERSON UNDER ANY BOND, WHETHER SUCH CLAIM SHALL BE DISPUTED OR NOT AND WITHOUT LIMITING ANY OTHER RIGHTS AND REMEDIES OF SURETY UNDER THIS AGREEMENT OR OTHERWISE EXISTING IN LAW OR AT EQUITY, UPON THE SURETY'S DEMAND THE PRINCIPAL AND INDEMNITOR SHALL IMMEDIATELY DEPOSIT WITH THE SURETY MONEY, SECURITIES OR OTHER COLLATERAL IN ANY AMOUNT AND FORM DESIGNATED BY AND ACCEPTABLE TO THE SURETY. ANY SUCH MONIES, SECURITIES OR OTHER COLLATERAL SHALL BE HELD BY THE SURETY AS COLLATERAL SECURITY, IN ADDITION TO AND NOT IN LIEU OF ANY OTHER BENEFITS AND PROTECTIONS AFFORDED TO THE SURETY BY THIS AGREEMENT OR ANY OTHER AGREEMENT. THE SURETY SHALL HAVE NO OBLIGATION TO INVEST THE MONIES OR SECURITIES OR THE PROCEEDS FROM ANY COLLATERAL SECURITY DEPOSITED PURSUANT TO THIS PARAGRAPH XI.**

B. The Surety shall have the right, at any time and without notice or legal process, to deposit, invest, convert, cash, exchange, renew, sell or otherwise dispose of said collateral security or the proceeds thereof in any manner, in such form and on such terms as it deems proper. The Surety shall have the right to use such funds, securities or other collateral, or any part thereof, at any time, without notice or legal process and in the Surety's sole and absolute discretion, in payment or compromise of any premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement.

C. To the extent that the Surety accepts collateral other than money or negotiable securities pursuant to this paragraph XI, the Surety may sell or liquidate such collateral at public or private sale for the benefit of itself or to any other person with or without notice to any Principal or Indemnitor. In the event of such sale, the Surety shall be liable or accountable to the Principal or Indemnitor only for surplus funds realized after all the Principal's and Indemnitors' obligations to the Surety pursuant to this Agreement or otherwise have been met.

D. If the Surety shall make demand upon any Principal and/or Indemnitor, written demand by the Surety to such Principal and/or Indemnitor at the address provided herein or last known to the Surety shall be deemed sufficient.

E. The Surety shall not be liable to any Principal or Indemnitor for any diminution in value, loss, damage or destruction of or to collateral held by the Surety, no matter how such diminution in value, loss, damage or

destruction may occur. In connection with any certificate of deposit or any other instrument evidencing the deposit of money with any person, firm, or corporation included in the collateral security, it is understood that the respective Principal or Indemnitor selected the depository and assumes full responsibility for the safety of the deposited funds.

F. The rights given to the Surety under this paragraph XI shall be in addition to, and not in limitation of, any other rights which Surety may have, including rights under other provisions of this Agreement or any other separate agreement, or otherwise existing or arising under law, or in equity.

## XII. TAKEOVER

Upon the occurrence of an Event of Default, the Surety shall have the right, but not the obligation, in its sole and absolute discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or by the terms of this Agreement, to take possession of any part or all of the work under any Bonded Contract and, at the cost and expense of the Principal and Indemnitor, to complete or to arrange for the completion of such Bonded Contract, and the Principal and Indemnitor shall promptly, upon demand, pay to the Surety all costs, losses and expenses incurred by the Surety or otherwise recoverable pursuant to any of the provisions of this Agreement. Upon the occurrence of an Event of Default, the Surety shall have the right, but not the obligation, to take possession of the Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for the completion of any Bonded Contract.

## XIII. ADVANCES

The Surety, in its sole and absolute discretion, is authorized and empowered, but not required, to guaranty loans, to advance or lend to or for the account of the Principal any money which the Surety may see fit, in connection with any Bonded Contract. All money expended by the Surety, or loaned or advanced to or for the account of the Principal or Indemnitor or guaranteed by the Surety for the Principal, and any and all related costs and expenses incurred by the Surety, including all fees and expenses otherwise recoverable pursuant to this Agreement, shall be conclusively deemed to be a loss to the Surety for which the Principal and Indemnitor shall be liable under this Agreement. The Surety may make any advances or loans it sees fit without the necessity of seeing to the application of the proceeds thereof. The Principal and Indemnitor shall be obligated to indemnify and hold the Surety harmless in accordance with the terms of this Agreement for the amount of any and all such advances or loans, notwithstanding the fact that some or all of the proceeds thereof may not have been utilized by the Principal in connection with Bonded Contracts, or otherwise for the purposes for which the money was advanced or loaned. Notwithstanding the fact that the Surety may have advanced or loaned money to the Principal, the Surety retains the absolute right to cancel any such guaranty or to cease advancing or lending money to the Principal, or for the account of the Principal, with or without cause, with or without notice to the Principal or Indemnitor, and in the sole and absolute discretion of the Surety.

## XIV. PREMIUMS

The Principal and Indemnitor shall pay to the Surety when due all premiums and charges of the Surety for any Bond in accordance with its rate filings, its manual of rates, or as may be agreed.

## XV. BOOKS, RECORDS AND INFORMATION

The Principal and Indemnitor shall furnish to the Surety such information as the Surety may request from time to time concerning the financial condition of the Principal or Indemnitor, the status of work under any Contract, the condition or status of the performance of any Contract, the payment of any obligations incurred in connection with any Contract, the status of claims or entitlements of the Principal in connection with any Contract, or in connection with any subcontract, supply or service accounts the Principal may have with third parties in connection with any Contract. Until such time as the liability of the Surety under any and all Bonds is terminated, the Surety shall have the right to access all of the books, records and accounts of the Principal or Indemnitor, wherever located, at any and all reasonable times, and upon reasonable notice. The Surety shall have access to any information maintained on behalf of or in connection with the Principal or Indemnitor at any banks, depositories, with any obligees on any Bond, information maintained by credit reporting agencies, materialmen, supply houses or any other persons, firms, or corporations doing business with the Principal, whenever requested by the Surety, and all of the foregoing entities are hereby expressly authorized to furnish to the Surety any information requested by it, including but not limited to, information concerning the status of the work performed under any Contract being performed by the Principal, the condition of the performance of any Contract, the status of and payments on any and all of the Principal's projects, whether bonded or unbonded, any related subcontractor or supplier accounts or obligations and all of the Principal's or Indemnitors' bank accounts. The Principal hereby further authorizes the Surety, through its representatives, to visit job sites and projects described in any Contract, to obtain access to all job records and personnel of the Principal or any owners or obligees to determine the status of work on any Contract, and to obtain any and all other information and

- 8 -

documents deemed necessary in the Surety's sole and absolute discretion for the protection of its interests. The Surety shall have access to any information maintained by any CPA or accountant employed by or representing the Principal and/or Indemnitors, including without limitation, any CPA work papers or financial information in any form maintained, compiled, or assembled by any CPA firm. Presentation of this Agreement shall constitute the Principal's and/or Indemnitor's consent to the release of all such information and an express waiver of any and all applicable privileges. The Surety's entitlement to information hereunder shall not be conditioned upon the occurrence of an Event of Default.

## XVI. DECLINE EXECUTION

Unless otherwise specifically agreed in writing, the Surety may, in its sole and absolute discretion, decline to issue or to execute any Bond requested or applied for by the Principal without incurring any liability whatsoever to the Principal or Indemnitor, and the Principal and Indemnitor hereby covenant and agree to make no claim to the contrary. If the Surety shall execute a bid or proposal Bond, or any similar undertaking, it shall nevertheless have the right, in its sole and absolute discretion, without incurring any liability to the Principal or Indemnitor therefor, to decline to execute any final or other Bond that may be required in connection with any award that may be made under the proposal for which the bid or proposal Bond is given. Notwithstanding the foregoing, the Principal and Indemnitor are not obligated to request the Surety to execute, provide or procure any Bond required of them in the performance and fulfillment of the Principal's obligations.

## XVII. NOTICE OF CLAIMS

If the Principal or Indemnitor become aware of any claim, demand, notice of claim or proceeding which may result in any liability to the Surety under any Bond, the Principal and Indemnitor shall notify the Surety, in writing, of the nature and substance of such claim, identifying the claimant, the project or matter in connection with which the claim has arisen, the amount of the claim and any other information reasonably necessary to assist the Surety in assessing its potential liability. Written notice hereunder shall be provided to the Surety within five (5) days of the first date upon which the Principal or Indemnitor become aware of the existence of such a claim or demand. In addition to such notice, the Principal and Indemnitor shall keep the Surety apprised of any material developments relating to such claim or demand, and the Principal and Indemnitor shall furnish the Surety with any additional information which the Surety may reasonably request relating to such claim or demand.

## XVIII. WAIVER OF NOTICE

A.  Increase or decrease the penalty or penalties of any Bond, to change any obligees thereon, to execute any continuations, enlargements, modifications or renewals thereof or substitution therefor with the same or different conditions, provisions, or obligees, and with the same, larger or smaller penalties, it being agreed that this Agreement shall apply to and cover such new or altered Bond or renewals even though the consent of the Surety may or does substantially increase the liability of the Principal or Indemnitor; or

B.  Take such steps as the Surety may deem necessary or expedient to obtain its release from liability or lessen or mitigate its liability under any Bond or in connection with any Contract; or

C.  Assent to any changes in any Contract, including, but not limited to, any change in the time for completion or performance of any Contract and to payments or advances thereunder; or

D.  Make, assent to or take any assignment.

## XIX. DISPUTES

A.  Indemnitors stipulate, acknowledge and agree that no act, omission or exercise of discretion made by Surety in relation to this Agreement, or in relation to a Bond or a Contract, shall constitute the basis of a claim against Surety or an excuse for refusing to comply with a demand by Surety for performance by Indemnitor pursuant to this Agreement, so long as such act, omission or exercise of discretion is made in Good Faith, nor shall any such act, omission or exercise of discretion made by Surety in Good Faith constitute the basis of a defense in any proceeding by Surety to enforce this Agreement, and Indemnitors waive any claim, excuse or defense which Indemnitor might otherwise be entitled to assert to the extent that such claim, excuse or defense is inconsistent with such stipulation, acknowledgement and agreement.

B.  Indemnitors stipulate, acknowledge and agree that the intent of this Agreement is that Indemnitors shall fully perform all of the obligations set forth in this Agreement, including but not limited to Indemnitors' obligations set forth in paragraph III and in paragraph XI of this Agreement, notwithstanding any Dispute, and that Indemnitors shall continue to fully perform all of the obligations set forth in this Agreement during the pendency of any proceeding in relation to a Dispute, including any action to enforce this Agreement, all within the time and in the manner otherwise called for or contemplated in this Agreement, and all as though there were no Dispute, and Indemnitors specifically agree, without limiting the generality of the foregoing, that during the

- 9 -

pendency of any proceeding to enforce this Agreement, Surety shall be entitled to demand and receive payment pursuant to paragraph III of this Agreement and a deposit of collateral security pursuant to paragraph XI of this Agreement, and that Surety shall be entitled to apply funds or other collateral deposited by Indemnitors or otherwise recovered by Surety in relation to a Bond to payment of any liability, loss or expense and to reimburse itself if Surety has otherwise paid any such liability, loss or expense, as described in paragraph III of this Agreement, all as though there were no Dispute. In the event that Surety demands that Indemnitors perform pursuant to this Agreement notwithstanding a Dispute or the pendency of a Dispute, as provided for in this paragraph XIX, and if Indemnitors do so perform, and if Indemnitors subsequently establish, in a proper forum having jurisdiction to make such determination with respect to Surety, that the performance of Indemnitors pursuant to this Agreement was not due, or was not due in the form or to the extent demanded, then Indemnitors shall have the right to recover from Surety the principal amount of the money paid to Surety or the collateral other than money (if still held by Surety) or the value realized by Surety from the collateral other than money deposited with Surety, to the extent, but only to the extent that Surety was not entitled to such money, collateral or value; and further provided that such right shall be Indemnitors' sole remedy for the Surety having made such demand and received such performance.

C. Indemnitors stipulate, warrant and agree that none of the following has or will have any relevance or probative value in any Dispute, and Indemnitors waive any right to seek discovery in any form of the following from Surety:

1. Any information concerning, related to or arising out of any bond or contract that is not directly related to the Bond that is the subject of the Dispute;

2. any personnel files of or kept by Surety;

3. any internal operating guidelines of Surety, whether maintained in formal fashion, such as in the form of a handbook, or not; and

4. any act, omission, exercise of discretion, or practice of Surety, or of its agents, employees and officers, not directly related to the Bond that is the subject of the Dispute;

and Indemnitors waive any right to seek discovery of any such documents or information.

## XX.   SUITS

Separate consecutive, simultaneous or overlapping suits may be brought hereunder by the Surety as causes of action accrue, or otherwise, and the bringing of suit or recovery of judgment upon any cause of action shall not prejudice, bar, impair or estop the Surety's right to bring other suits upon other causes of action, against the same or different parties, whenever such other causes of action may have arisen. Separate suits may be brought hereunder by the Surety against any or all of the Principals or Indemnitors, or against any one or several but fewer than all of the Principals and Indemnitors, and the bringing of such suit or suits or the recovery of judgment against one or more but fewer than all of the Principals and Indemnitors shall not prejudice, impair, bar or estop the bringing of suit or suits against the remaining Principals and Indemnitors. The Surety is hereby expressly authorized by the Principals and Indemnitors to compromise or settle any claim based upon this Agreement with any one or more of the Principals or Indemnitors individually, and such compromise or settlement shall not affect the liability of any non-settling Principal or Indemnitor to the Surety.

## XXI.   CHOICE OF FORUM, VENUE, JURISDICTION AND CHOICE OF LAW

THE PRINCIPAL AND INDEMNITORS HEREBY CONSENT TO ENFORCEMENT OF THIS AGREEMENT AND SUBMIT THEMSELVES TO PERSONAL JURISDICTION IN ANY AND ALL JURISDICTIONS IN WHICH (A) SURETY MAY SUSTAIN OR PAY ANY LOSS FOR WHICH PRINCIPAL AND INDEMNITORS MAY BE LIABLE HEREUNDER; (B) SURETY MAY BE SUED OR BE SUBJECT TO SUIT OR ARBITRATION AS A CONSEQUENCE OF HAVING ISSUED ANY BOND ON BEHALF OF PRINCIPAL; (C) ANY CONSTRUCTION PROJECT MAY BE LOCATED WHICH IS THE SUBJECT OF ANY CONTRACT REFERRED TO IN ANY BOND; AND/OR (D) ANY ASSETS OF ANY PRINCIPAL OR INDEMNITOR MAY BE LOCATED.

IN ADDITION, THE PRINCIPAL AND INDEMNITORS HEREBY CONSENT TO ENFORCEMENT OF THIS AGREEMENT AND SUBMIT THEMSELVES TO PERSONAL JURISDICTION IN ANY FEDERAL OR STATE COURT LOCATED IN DALLAS COUNTY, STATE OF TEXAS, HAVING SUBJECT MATTER JURISDICTION OVER SUCH A PROCEEDING.   PRINCIPAL AND INDEMNITORS IRREVOCABLY CONSENT TO EXCLUSIVE JURISDICTION AND VENUE IN SUCH COURT AS MAY BE SELECTED BY SURETY AMONG THE ALTERNATIVE JURISDICTIONS TO WHICH PRINCIPAL AND INDEMNITORS HAVE CONSENTED TO SUBMIT THEMSELVES TO PERSONAL JURISDICTION AS SET FORTH ABOVE AND HEREBY WAIVE ANY AND ALL RIGHTS TO OBJECT TO SUCH VENUE AND JURISDICTION. PRINCIPAL AND INDEMNITORS FURTHER AGREE THAT (I) ALL OBLIGATIONS OF PRINCIPAL AND INDEMNITORS HEREUNDER ARE PERFORMABLE, AND ALL MONIES DUE THE SURETY HEREUNDER ARE PAYABLE, IN THAT LOCATION; AND (II)

**THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THAT STATE, INCLUDING, BUT NOT LIMITED TO, STATUTE(S) OF LIMITATIONS, WITHOUT REGARD TO THE CONFLICT OF LAW RULES OF THAT STATE OR ANY OTHER STATE.**

## XXII. OTHER INDEMNITY

The Principal and Indemnitor shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Principal or Indemnitor, accepted or released other agreements, agreements of indemnity or collateral in connection with the execution or procurement of any Bond from the Principal or Indemnitor or others, it being expressly understood and agreed by the Principal and Indemnitor that any and all other rights which the Surety may have or acquire against the Principal or Indemnitor or others under any such other or additional agreements of indemnity, or collateral, shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa.

## XXIII. SUBORDINATION OF INDEMNITOR

The Indemnitor shall have no rights of indemnity or contribution against the Principal's or against any Indemnitors' property until all of the Principal's and Indemnitors' obligations to the Surety under this Agreement have been satisfied in full.

## XXIV. ADDITIONAL SURETIES

In the event that the Surety procures the execution of any Bond by any other surety or sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all of the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties as their interests may appear provided, however, that it is the intent of this Agreement that Surety is and shall be conclusively presumed to be a real party in interest under this Agreement to the full extent of liability, loss, cost or expense incurred in connection with, related to or arising out of a Bond or an Event of Default regardless of whether such liability or loss, cost or expense may involve a co-surety or reinsurer, or the like, and regardless of whether a co-surety or reinsurer, or the like, has some or may bear some or all of such liability or loss, cost or expense, provided that Indemnitors may request as a condition to such presumption that Surety provide reasonable assurance that Indemnitors shall not be subject to redundant liability under this Agreement.

## XXV. SURETYSHIP COVERED

This Agreement applies to all Bonds executed or procured by the Surety or any Additional Sureties for or on behalf of the Principal, in the Principal's own name or names or as co-venturers with others, whether prior or subsequent to the execution and delivery of this Agreement, and from time to time until this Agreement is terminated in accordance with its terms.

## XXVI. DISCHARGE FROM SURETYSHIP

The Principal and Indemnitor will, at any time upon the request of the Surety, procure the discharge or release of the Surety from any Bond and from any and all liability by reason thereof. The Surety may, at any time, take such actions as it deems necessary or proper to obtain its release from any and all liability under any Bond. Upon such discharge or release, the Surety shall return to the Principal any portion of any premium paid which is unearned as a result of such discharge or release.

## XXVII. NATURE OF THE SURETY'S RIGHTS

All rights, remedies, powers and entitlements of the Surety under this Agreement or in any other agreements among the Surety, the Principal or Indemnitor, or by law, equity or statute, are cumulative, and the exercise of, or failure to exercise, any right, remedy, power or entitlement at any time shall not be deemed to be an election of remedy, estoppel or a waiver of any other right, remedy, power or entitlement. The Surety is not required to exhaust its remedies or rights against any Principal or await receipt of any dividends from any Principal or its legal representatives before asserting its rights under this Agreement against the Indemnitor. The Surety is not required to pursue its rights against any collateral it holds pursuant to this Agreement or otherwise before asserting its rights under this Agreement against the Principal or Indemnitor. The rights, powers, remedies and entitlements given to the Surety by this Agreement shall be and are in addition to and not in lieu of or substitution for any and all other rights, powers, remedies and entitlements which the Surety may have or acquire against the Principal or Indemnitor, or others, whether by the terms of this Agreement, by the terms of any other agreements, by operation of law or

- 11 -

otherwise. The Principal and Indemnitor hereby waive any defense that this Agreement was executed subsequent to the date of any Bond.

## XXVIII. TERMINATION

This Agreement may be terminated prospectively, and not retroactively, by any Principal or any Indemnitor, and said termination shall become effective only after thirty (30) days following receipt by the Surety of written notice to the Surety, but any notice of termination shall not operate to modify, bar, discharge, limit, affect or reduce the obligations of such Principal or Indemnitor under or pursuant to this Agreement, or otherwise, with respect to any Bond which is or was executed prior to the effective date of such termination, or with respect to any Bond executed after the effective date of such termination upon the award of any Contract to such Principal on a bid or proposal with respect to which the Surety has executed any bid or proposal Bond or similar undertaking prior to the effective date of termination, or which the Surety has become obligated to execute prior to the effective date of termination. Further, such notice of termination shall operate only with respect to the respective Principal or Indemnitor upon whose behalf such notice shall have been given.

## XXIX. INVALIDITY

If any Principal or Indemnitor fails to execute this Agreement, or if the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing it, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. The failure of any Principal to sign any Bond shall not release such Principal or Indemnitor from any liability under this Agreement. This Agreement shall be construed, first, to provide the most extensive protection possible to Surety within any limits imposed by applicable law if and to the extent that any provision or term of this Agreement cannot be reasonably construed in such a way as to be enforceable under applicable law, then such provision or term shall be deemed to have been excised from this Agreement and this Agreement shall be enforced as though such provision or term had never been a part hereof. If any provision, part or subpart of this Agreement is or is held to be void or unenforceable under the laws of any place governing its construction or enforcement, this Agreement shall not be rendered void or unenforceable thereby, but the remainder of this Agreement shall continue and be enforceable as though such unenforceable provision, part or sub-part was omitted.

## XXX. MODIFICATIONS

This Agreement may not be altered or modified orally. No change or modification shall be effective unless made by written endorsement, executed by an officer of the Surety and all of the Principals.

## XXXI. CONSTRUCTION

This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety.

## XXXII. REPRESENTATIONS

The Principal and Indemnitor represent to the Surety that they have carefully read and understand this entire Agreement, and have had the opportunity to discuss its terms with an attorney of its or their choosing, and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein.

## XXXIII. WAIVER OF JURY TRIAL

THE PRINCIPAL AND THE INDEMNITOR EXPRESSLY AGREE THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY ANY PARTY TO THIS AGREEMENT, OR ANY OF THE SUCCESSORS OR ASSIGNS, IN CONNECTION WITH OR WITH RESPECT TO THIS AGREEMENT, OR THE PRINCIPAL AND THE INDEMNITOR'S OBLIGATIONS HEREUNDER, OR PURSUANT TO OR IN CONNECTION WITH ANY BONDS, CONTRACT OR BONDED CONTRACT SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING.

## XXXIV. GENERAL PROVISIONS

A. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall be constitute one and the same instrument. The Principal and Indemnitor agree that there have been no oral or other agreements of any kind as a condition precedent, or to induce the execution and delivery of this Agreement by any party. Delivery of this Agreement by Indemnitor to Surety and reliance of Surety upon the representations and promises of Indemnitor as set forth in this Agreement shall be conclusively presumed from the possession by Surety or Surety's agent of a signed original or copy of this Agreement.

B. This Agreement sets forth executory undertakings of Indemnitors and Principal, only, and there are no enforceable promises of Surety set forth in this Agreement. Indemnitors and Principal acknowledge that the Surety shall not be required to be a signatory of this Agreement; however, if the Surety, in its discretion, shall execute a written acknowledgment or acceptance of this Agreement for any reason, such written acknowledgment or acceptance shall then constitute a part of this Agreement.

C. The Surety shall be entitled to enforce any of the provisions of this Agreement directly against any Indemnitor, without the necessity of first proceeding against any Principal.

D. The release of any party to this Agreement shall not release any other party. The failure of any party to perform any of its obligations under this Agreement shall not excuse the performance of any other party to this Agreement.

E. The Indemnitor shall, at all times, remain familiar with the financial condition and operations of the Principal and the status of all Contracts.

F. The Principal and Indemnitor shall promptly provide all written notices to the Surety, as required by this Agreement or otherwise, by registered or certified mail, return receipt requested, directed to the Surety at 601 S. Figueroa St., Suite 1600, Los Angeles, CA 90017.

G. Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa.

IN WITNESS WHEREOF, the Indemnitor and Principal hereby execute this Agreement, under seal.

**Individual Indemnitor(s)**

1. Name: Andrew Garison, Sr.                    Address: 5 Nob View Circle

   Signature: _____                    North Little Rock, AR 72205

2. Name: Kay Garison                             Address: 5 Nob View Circle

   Signature: _____                    North Little Rock, AR 72205

3. Name: _____                         Address: _____

   Signature: _____

4. Name: _____                         Address: _____

   Signature: _____

5. Name: _____                         Address: _____

   Signature: _____

6. Name: _____                         Address: _____

   Signature: _____

7. Name: _____                         Address: _____

   Signature: _____

8. Name: _____                         Address: _____

   Signature: _____

**Corporate, LLC, Partnership, Trust or Other Entity Indemnitor**

1. Name: Garison Constructors of Arkansas, LLC     Address: 1419 West Park Drive, Suite A

   Signature: _____     Little Rock, AR 72204

   By: Andrew Garison, Sr. _____, Title: President    Type of Entity: Limited Liability Company

2. Name: _____ Address: _____

   Signature: _____     _____

   By: _____, Title: _____ Type of Entity: _____

3. Name: _____ Address: _____

   Signature: _____     _____

   By: _____, Title: _____ Type of Entity: _____

4. Name: _____ Address: _____

   Signature: _____     _____

   By: _____, Title: _____ Type of Entity: _____

5. Name: _____ Address: _____

   Signature: _____     _____

   By: _____, Title: _____ Type of Entity: _____

6. Name: _____ Address: _____

   Signature: _____     _____

   By: _____, Title: _____ Type of Entity: _____

7. Name: _____ Address: _____

   Signature: _____     _____

   By: _____, Title: _____ Type of Entity: _____

8. Name: _____ Address: _____

   Signature: _____     _____

   By: _____, Title: _____ Type of Entity: _____

## ACKNOWLEDGMENTS

State of __Arkansas__
County of __Pulaski — vs. Lonoke__

On __April 5, 2010__ before me, __Valerie K. Culbreath__ personally appeared __Andrew Garison, Sr.__ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Arkansas__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Valerie K. Culbreath__ (Seal)

State of __Arkansas__
County of __Pulaski — vs. Lonoke__

On __April 5, 2010__ before me, __Valerie K. Culbreath__ personally appeared __Kay Garison__ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Arkansas__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Valerie K. Culbreath__ (Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

State of _____
County of _____

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

- 15 -

**ACKNOWLEDGMENTS**

State of _____
County of _____

On_____ before me, _____personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)


State of _____
County of _____

On_____ before me, _____personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)


State of _____
County of _____

On_____ before me, _____personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)


State of _____
County of _____

On_____ before me, _____personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)